JUDGE PATTERSON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

      -v.-

MAURICE MCDOWALL,
ANDREA MOORE,
ALEKSANDER LIPKIN, a/k/a "Alex,"
MARINA DUBIN,
KERRI CLARKE and
MICHAEL IRVING,

          Defendants.

- - - - - - - - - - - - - - - - - - - - x

**07 CRIM. 1054**

    :

    :    **SEALED INDICTMENT** ᶻᶜᴰ

    :

    :    07 Cr.

    :

    :

    :

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11|19|67_
```

## COUNT ONE

(CONSPIRACY TO COMMIT BANK AND WIRE FRAUD)

    The Grand Jury charges:

### BACKGROUND

    1.   At all times relevant to this Indictment, Lost and Found Recovery, LLC ("Lost and Found") was a company that held itself out as a home foreclosure rescue specialist, with offices located at 1009 Bergen Street, Brooklyn, New York.  MAURICE MCDOWALL, the defendant, was the principal of Lost and Found. MCDOWALL employed, among others, ANDREA MOORE and KERRI CLARKE, the defendants.  MCDOWALL previously ran a similar business, called Home Mergers LLC, before opening Lost and Found.

    2.   At various times relevant to this Indictment, Homes R Us USA, LLC ("Homes R Us") was a company that held itself out as a home foreclosure rescue specialist which operated in Brooklyn, New York.  The principals of Homes R Us were ANDREA

MOORE and MICHAEL IRVING, the defendants.

3.    At all times relevant to this Indictment, AGA
Capital NY, Inc. ("AGA Capital") was a mortgage brokerage firm
with various office located in Brooklyn, New York.    ALEKSANDER
LIPKIN, a/k/a "Alex," the defendant, was employed by AGA Capital
as a mortgage broker.

4.    During the time relevant to this Indictment, the
defendants facilitated the funding of over eighty home mortgages
and/or equity loans with a value of over twenty million dollars
with various banks and lending institutions, whose funds were
typically cleared through banks in New York City ("the lenders").
Lost and Found and Homes R Us earned a total of at least $1.4
million dollars in fees on these loans.    As described more fully
below, virtually all of the loans funded as part of the
defendants' foreclosure rescue scheme are in foreclosure status,
often after the lender received no payments on the loans, and
many of the homeowners who participated in the defendants' scheme
are facing eviction or have already lost their homes.

## THE SCHEME TO DEFRAUD

5.    As set forth more fully below, from in or about
November 2003 through in or about April 2005, MAURICE MCDOWALL,
ANDREA MOORE, ALEXSANDER LIPKIN, a/k/a "Alex," MARINA DUBIN,
KERRI CLARK, and MICHAEL IRVING, the defendants, engaged in an
illegal scheme to defraud homeowners who were facing foreclosure

and lenders who made mortgage and home equity loans.  The
defendants, through Lost and Found and Homes R Us, induced
homeowners to "sell" their homes to persons controlled by the
defendants, based on the defendants' false and misleading
representations that they could "save" a homeowner's home from
foreclosure.  The defendants, once in control of homes in
foreclosure, "cashed out" on the properties by inducing lenders
to give mortgages and home equity loans in excess of the
properties' real value, based on the submission of documents
containing materially false or misleading information, and then
defaulting on the loans.  The defendants' scheme defrauded
homeowners of title to their homes, and caused the lenders to
hold millions of dollars of bad loans.

      6.   As part of the scheme to defraud, the defendants
generated business by, among other things, placing advertisements
in newspapers representing that Lost and Found and Homes R Us
were foreclosure rescue specialists which had the ability to
"save" a home from foreclosure.  One such advertisement stated:
"Special Programs for Home Owners Who are in Pre-Foreclosure or
Foreclosures even up-to 1 year default in payment, we can still
stop your house from Foreclosure.  Put cash in your pocket and
pay up your Mortgage for one year.  Quick closing in 5 days, and
you will still own your home."  A flyer promoting Lost and Found
stated: "Lost and Found Recovery, Inc., has several programs that

can help you during this stressful time of foreclosure.  Other
programs will promise you many things and not live up to their
word, WE WILL!!"

7.  As a further part of the scheme to defraud, the
defendants targeted homeowners whose homes, located primarily in
Brooklyn and the Bronx, were in foreclosure, or facing
foreclosure, and offered these distressed homeowners a plan to
"save" their homes by refinancing their debt with new, larger
mortgages.  Because the homeowners in foreclosure typically had
poor credit, as measured by commercial credit agencies, and
therefore were not eligible to refinance their debt at favorable
terms, the defendants induced some of these homeowners to "sell"
their homes to third parties, or "straw buyers," so that the
straw buyers could apply for loans which would purportedly be
used to "save" the home.  To accomplish the "sale" of the home,
some homeowners were directed to deed their properties to the
straw buyers, causing the homeowners to give up their ownership
interest in their homes and any equity in the home they had
created.  In such cases, as described below, the homeowners were
told that title would be returned to them in one year's time.

8.  As a further part of the scheme to defraud, the
defendants falsely represented to the homeowners that, once the
straw buyer had obtained new mortgages on the home, the
defendants would use the mortgage proceeds to pay off the

4

homeowners' old debt and make one year's worth of payments on the new loans.  During that year, the homeowners were told that they could continue to live in their homes, and work on improving their finances and their credit.  At the end of the year, the defendants falsely represented to the homeowners that title to their homes would be returned to them by the straw buyers, their credit would be repaired, and their homes would be "saved."

9.    As a further part of the scheme to defraud, the defendants did not explain to certain of the homeowners that the plan to "save" their home required them to deed their house to a third party, or obtain their permission to deed their homes to others.  In some cases, the defendants in effect stole the property of the homeowner by forging the homeowner's signature on documents such as a contract of sale and a deed, which had the effect of transferring the homeowner's home to a straw buyer, controlled by the defendants, without the homeowner's knowledge or consent.

10.    As a further part of the scheme to defraud, the defendants recruited individuals with good credit scores to act as the straw buyers of homes facing foreclosure.  The straw buyers were typically told that they were helping someone to "save" their home, and were paid a fee of up to ten thousand dollars per property for taking out debt in their name.  Once a potential straw buyer agreed to participate in the scheme, the

defendants submitted loan applications to lenders on behalf of the straw buyers.

11.  As a further part of the scheme to defraud, the defendants fraudulently improved the straw buyer's credit worthiness by falsifying certain personal and financial information about the straw buyer that was material to the lenders in their lending decisions.  To that end, the defendants prepared and submitted to the lenders documents containing false and misleading information concerning the straw buyer's income, assets, and existing debt, among other things.  In addition to false statements concerning the straw buyer's financial profile, the defendants falsely represented to the lenders that the straw buyers intended to reside in the property that would secure each mortgage or loan, when, in fact, the properties were already occupied by the distressed homeowners.

12.  As a further part of the scheme to defraud, the defendants refinanced multiple properties in the name of individual straw buyers, without fully disclosing that fact to the lenders.  Thus, loans were taken out in the name of the same straw buyer for up to four different properties.  To minimize the risk of detection by any of the lenders, such loans were closed within a short period of time.

13.  As a further part of the scheme to defraud, the defendants caused the straw buyers to obtain mortgages and home

equity loans in amounts greater than the homeowner's pre-existing debt and, in some cases, in amounts greater than the home's actual value.  The difference between the amount of the new loans and the old loans represented the defendants' profit from the scheme.

14.  As a further part of the scheme to defraud, the defendants controlled the pay out of the loan proceeds during the closing of each loan.  Thus, at a loan closing, after the homeowner's previous debt was retired, the defendants caused the remainder of the loan proceeds to be deposited in bank accounts they controlled and kept the money for themselves, rather than using the loan proceeds to make the monthly payment on the new loan, as promised to the homeowner.  In some cases, the defendants failed to make even one payment on the new loan, causing the loan to default immediately.  In nearly every case, the defendants eventually failed to make the promised payments and caused the loans to default.

15.  As a result of the defendants' scheme to defraud, the homeowners lost title to their homes and faced eviction, the straw buyers owed the lenders hundreds of thousands of dollars that they were unable to repay, and the lenders suffered losses from the defaulted loans.

**THE DEFENDANTS**

16.  At various times relevant to this Indictment,

7

MAURICE MCDOWALL, ANDREA MOORE, and KERRI CLARKE, the defendants, and others were employed by Lost and Found and/or Homes R Us. MCDOWALL was the founder of Lost and Found and directed its daily operations, including the recruiting of homeowners and straw buyers to participate in the scheme.

17.  MOORE served as a manager at Lost and Found and reported to MCDOWALL.  MOORE was also responsible for attending loan closings on behalf of Lost and Found and, later, Homes R Us. Sometime in January 2005, MOORE founded Homes R Us with MICHAEL IRVING, the defendant.  MOORE and IRVING also served as straw buyers.

18.  KERRI CLARKE, the defendant, was MCDOWALL's assistant, and was responsible for paperwork and communicating with the mortgage brokerages, including AGA Capital.

19.  ALEKSANDER LIPKIN, a/k/a "Alex," the defendant, acted as a mortgage broker for AGA Capital.  LIPKIN supervised and coordinated the submission of fraudulent loan applications and other documents to the lenders on behalf of straw buyers working for Lost and Found and/or Homes R Us and brokered the resulting loans.

20.  At all times relevant to this Indictment, MARINA DUBIN, the defendant, was a real estate paralegal who served as the settlement agent for a majority of the loans that were fraudulently obtained by the defendants.  DUBIN organized

8

closings, prepared documents, and disbursed the fraudulently obtained loan proceeds to various defendants.

## THE CONSPIRACY

21.  From at least in or about November 2003, up to and including in or about April 2005, in the Southern District of New York and elsewhere, MAURICE MCDOWALL, ANDREA MOORE, ALEXSANDER LIPKIN, a/k/a "Alex," MARINA DUBIN, KERRI CLARKE and MICHAEL IRVING, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1343 and 1344 of Title 18, United States Code.

22.  It was a part and an object of the conspiracy that MAURICE MCDOWALL, ANDREA MOORE, ALEXSANDER LIPKIN, a/k/a "Alex," MARINA DUBIN, KERRI CLARKE and MICHAEL IRVING, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did execute a scheme and artifice to defraud financial institutions, including Fremont Investment & Loan, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

23.  It was further a part and an object of the

conspiracy that MAURICE MCDOWALL, ANDREA MOORE, ALEXSANDER

LIPKIN, a/k/a "Alex," MARINA DUBIN, KERRI CLARKE and MICHAEL

IRVING, the defendants, and others known and unknown, unlawfully,

willfully and knowingly would and did devise a scheme and

artifice to defraud financial institutions, and to obtain money

and property from financial institutions, banks, and others, by

means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing

such schemes and attempting to do so, would and did transmit and

cause to be transmitted by means of wire and radio communication

in interstate and foreign commerce, writings, signs, signals,

pictures and sounds, in violation of Title 18, United States

Code, Section 1343.

### **OVERT ACTS**

24.  In furtherance of the conspiracy and to effect the

illegal objects thereof, the following overt acts, among others,

were committed in the Southern District of New York and

elsewhere:

a.  In or about November 2003, a homeowner ("Homeowner

1"), who resides at an address on E. 49th Street in Brooklyn, New

York, defaulted on mortgage payments and the lender began

foreclosure proceedings.  At that time, MAURICE MCDOWALL, the

defendant, solicited Homeowner 1 and explained that he could save

Homeowner 1's home by having someone else take over Homeowner 1's

mortgages.  Homeowner 1 declined this offer.  Homeowner 1 did not agree to sell her home to MCDOWALL, or give MCDOWALL permission to sell the home to someone else.

b.    In or about 2004, KERRI CLARKE, the defendant, recruited a person to act as a straw buyer ("straw buyer 1") for Lost and Found.  CLARKE told straw buyer 1 that MAURICE MCDOWALL, the defendant, helped people whose homes were in foreclosure, and paid people with good credit to purchase houses.

c.    In or about December 2004, a homeowner ("Homeowner 2"), who resided at an address on Ward Avenue in the Bronx, New York, met with MAURICE MCDOWALL, the defendant, at Lost and Found's office for the purpose of learning about how to refinance her home.  During this meeting, MCDOWALL explained that he had someone who would buy Homeowner 2's house and take out a new mortgage on it, that Homeowner 2 would be permitted to live the home while MCDOWALL would use the money from the loan proceeds to make the mortgage payments for one year, and that at the end of the year Homeowner 2 would get the house back.

d.    On or about December 6, 2004, a homeowner ("Homeowner 3"), who resided at an address on E. 230th Street, Bronx, New York, was directed by ANDREA MOORE, the defendant, to attend a meeting.  At the meeting, which was in fact a closing on the sale of Homeowner 3's home, Homeowner 3, who is approximately 84 years old, was given documents to sign by ANDREA MOORE, the

11

defendant, which Homeowner 3 did not understand.  Homeowner 3 signed these documents, which had the effect of "selling" Homeowner 3's home to ANDREA MOORE, the defendant, without Homeowner 3's knowledge or consent.  At the closing, Option One Mortgage Corporation funded mortgage loans in the name of ANDREA MOORE, the defendant, in the amount of $370,000.  In connection with this closing, approximately $151,000 was deposited into a bank account controlled by MAURICE MCDOWALL, the defendant.

          e.    On or about December 29, 2004, straw buyer 1 attended a real estate closing for Homeowner 2's property on Ward Avenue, Bronx, New York.  Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent.  Documents submitted to the lender, BNC Mortgage Company, from this closing, which had been signed by ALEXSANDER LIPKIN, the defendant, contained false representations.  Among other things, the documents falsely represented that straw buyer 1 intended to reside in the property as a primary residence, and falsely overstated straw buyer 1's income and assets.  At the closing, BNC Mortgage Company funded mortgage loans in the name of straw buyer 1 in the amount of $420,000, by wiring such funds from a bank account in New Jersey to a bank account in New York, New York.

          f.    On or about January 14, 2005, a straw buyer

12

("straw buyer 2") attended a real estate closing for a property at an address on E. 46th Street, Brooklyn, New York. Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, WMC Mortgage, from this closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among other things, the documents falsely represented that straw buyer 2 intended to live in the property as a primary residence and falsely overstated straw buyer 2's income. At the closing, WMC Mortgage funded mortgage loans in the name of straw buyer 2 in the amount of $335,000. In connection with this closing, DUBIN disbursed approximately $60,000 of loan proceeds to a bank account controlled by Lost and Found.

g.    On or about January 19, 2005, straw buyer 2 attended a real estate closing for a property at an address on Essex Street, Brooklyn, New York. Among those at the closing were MAURICE MCDOWALL and ANDREA MOORE, the defendants, who were present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, Argent Mortgage Company, LLC, from this closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among other things,

13

the documents falsely represented that straw buyer 2 intended to live in the property as a primary residence and falsely overstated straw buyer 2's income and assets. At the closing, Argent Mortgage Company funded mortgage loans in the name of straw buyer 2 in the amount of $435,000. In connection with this closing, DUBIN disbursed approximately $85,000 of loan proceeds to a bank account controlled by Homes R Us.

h.   On or about January 28, 2005, straw buyer 1 attended a real estate closing for a property located on E. 35th Street, Brooklyn, New York. Among those at the closing were MAURICE MCDOWALL and ANDREA MOORE, the defendants, who were present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, Argent Mortgage Company, LLC, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among other things, the documents falsely represented that straw buyer 1 intended to live in the property as a primary residence and falsely overstated straw buyer 1's income and assets. At the closing, Argent Mortgage Company funded mortgage loans in the name of straw buyer 1 in the amount of $325,000. In connection with this closing, DUBIN disbursed approximately $43,000 of loan proceeds to a bank account controlled by Lost and Found.

i.   On or about January 31, 2005, a straw buyer

14

("straw buyer 3") attended a real estate closing for a property with an address on Carlton Avenue, Islip Terrace, New York. Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, WMC Mortgage, from this closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among the other things, the documents falsely represented that straw buyer 3 intended to live in the property as a primary residence and falsely overstated straw buyer 3's income. At the closing, WMC Mortgage funded mortgage loans in the name of straw buyer 3 in the amount of $565,000. In connection with this closing, DUBIN disbursed approximately $20,000 of loan proceeds to a bank account controlled by Homes R Us.

j.    On or about February 25, 2005, straw buyer 3 attended a real estate closing for Homeowner 1's property with an address on E. 49th Street, Brooklyn, New York. Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. At this closing, MOORE signed documents on Homeowner 1's behalf, based on the false representation that she had been given power of attorney by Homeowner 1 when, in fact, Homeowner 1 had not given MOORE

15

permission or authority to act on Homeowner 1's behalf. Documents submitted to the lender, Argent Mortgage Company, LLC, from the closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among other things, the documents falsely represented that straw buyer 3 intended to live in the property as a primary residence and falsely overstated straw buyer 3's income. At the closing, Argent Argent Mortgage Company funded mortgage loans in the name of straw buyer 3 in the amount of $395,000. In connection with this closing, DUBIN disbursed approximately $50,000 of loan proceeds to a bank account controlled by Homes R Us.

k.    On or about March 3, 2005, a straw buyer ("straw buyer 4") attended a real estate closing for a property with an address on 201st Street, St. Albans, New York. Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, Accredited Home Lenders, from the closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations. Among other things, the documents falsely represented that straw buyer 4 intended to live in the property as a primary residence and falsely overstated straw buyer 4's income and assets. At the closing, Accredited Home Lenders funded mortgage loans in the name of straw buyer 4 in the amount

16

of $400,000, by wiring such funds from a bank account in Delaware to a bank account in New York, New York.  In connection with this closing, DUBIN disbursed approximately $50,000 of loan proceeds to a bank account controlled by Homes R Us.

l.    On or about April 5, 2005, straw buyer 4 attended a real estate closing for a property with an address on Blake Avenue, Brooklyn, New York.  Among those at the closing were MICHAEL IRVING, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent.  Documents submitted to the lender, Argent Mortgage Company, LLC, from the closing, which had been signed by ALEKSANDER LIPKIN, the defendant, contained false representations.  Among other things, the documents falsely represented that straw buyer 4 intended to live in the property as a primary residence and falsely overstated straw buyer 4's income and assets.  At the closing, Argent Mortgage Company funded mortgage loans in the name of straw buyer 4 in the amount of $290,000.  In connection with this closing, DUBIN disbursed approximately $30,000 of loan proceeds to a bank account controlled by Lost and Found, $7,600 to ANDREA MOORE, the defendant, and $6,000 of loan proceeds to a bank account controlled by Homes R Us.

m.    On or about February 14, 2005, MICHAEL IRVING, the defendant, participated in a real estate closing as a straw buyer

17

for a property with an address on Bergen Street, Brooklyn, New York. Among those at the closing were ANDREA MOORE, the defendant, who was present on behalf of Lost and Found, and MARINA DUBIN, the defendant, who acted as the settlement agent. Documents submitted to the lender, WMC Mortgage, from this closing contained false representations. Among other things, the documents falsely represented that MICHAEL IRVING, the defendant, intended to live in the property as a primary residence. At the closing, WMC Mortgage funded mortgage loans in the name of MICHAEL IRVING, the defendant, in the amount of $550,000. In connection with this closing, DUBIN disbursed approximately $225,000 to a bank account controlled by Homes R Us.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Wire Fraud re: Property on E. 230th Street, Brooklyn, New York)

The Grand Jury further charges:

25. On or about December 6, 2004, in the Southern District of New York and elsewhere, MAURICE MCDOWALL and ANDREA MOORE, the defendants, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound,

18

to wit, MCDOWALL and MOORE, the defendants, in order to procure
home mortgage and/or equity loans in the amount $370,000, which
loans were funded by interstate wire from a bank account in
Pennsylvania to a bank account in New York, New York, submitted
and caused to be submitted to Option One Mortgage Corporation
documents containing false information regarding the borrower's
intent to live in the property, among other things.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT THREE

(Wire Fraud re: Property on 152nd Street, Jamaica, New York)

The Grand Jury further charges:

26.   On or about February 11, 2005, in the Southern
District of New York and elsewhere, MAURICE MCDOWALL, ANDREA
MOORE, ALEKSANDER LIPKIN, a/k/a "Alex," and MARINA DUBIN, the
defendants, unlawfully, willfully, and knowingly did devise a
scheme and artifice to defraud and to obtain money and property
by means of materially false and fraudulent pretenses,
representations and promises, and did transmit and cause to be
transmitted by means of wire and radio communication in
interstate commerce, a writing, sign, signal, picture and sound,
to wit, MCDOWALL, MOORE, LIPKIN, and DUBIN, the defendants, in
order to procure home mortgage and/or equity loans in the amount
$315,000, which loans were funded by interstate wire from a bank
account in Delaware to a bank account in New York, New York,

submitted and caused to be submitted to BNC Mortgage Company documents containing false information regarding the borrower's intent to live in the property, and the borrower's income and assets, among other things.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR

(Wire Fraud re: Property on Ward Avenue, Bronx, New York)

The Grand Jury further charges:

27.  On or about December 29, 2004, in the Southern District of New York and elsewhere, MAURICE MCDOWALL, ANDREA MOORE, ALEKSANDER LIPKIN, a/k/a "Alex," MARINA DUBIN, and KERRI CLARKE, the defendants, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, MCDOWALL, MOORE, LIPKIN, DUBIN and CLARKE, the defendants, in order to obtain home mortgage and/or equity loans totaling $420,000, which loans were funded by interstate wire from a bank account in New Jersey to a bank account in New York, New York, submitted and caused to be submitted to BNC Mortgage Company documents containing false information regarding the

borrower's intent to live in the property, and the borrower's income and assets, among other things.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT FIVE

(Wire Fraud re: Property on 201st Street, St. Albans, New York)

The Grand Jury further charges:

28.  On or about March 3, 2005, in the Southern District of New York and elsewhere, MAURICE MCDOWALL, ANDREA MOORE, ALEKSANDER LIPKIN, a/k/a "Alex," and MARINA DUBIN, the defendants, unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, the defendants, in order to obtain home mortgage and/or equity loans totaling $400,000, which loans were funded by interstate wire from a bank account in Delaware to a bank account in New York, New York, submitted and caused to be submitted to Accredited Home Lenders documents containing false information regarding the borrower's intent to live in the property, and the borrower's income and assets, among other things.

(Title 18, United States Code, Sections 1343 and 2.)

21

## COUNT SIX

(Bank Fraud re: Property on Linden Place, Hempstead, New York)

29.  On or about April 18, 2005, in the Southern District of New York and elsewhere, MAURICE MCDOWALL and ANDREA MOORE, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, MCDOWALL and MOORE, the defendants, submitted and caused to be submitted to Fremont Investment & Loan documents containing false information regarding the borrower's intent to live in the property and the borrower's income, among other things, in order to procure home mortgage and/or equity loans in the amount of $350,000, which funds were wired through a bank account in New York, New York.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SEVEN

(Wire Fraud re: Property on Bergen Street, Brooklyn, New York)

The Grand Jury further charges:

30.  On or about February 28, 2005, in the Southern District of New York and elsewhere, MAURICE MCDOWALL, ANDREA MOORE, MARINA DUBIN, and MICHAEL IRVING, the defendants,

unlawfully, willfully, and knowingly did devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and did transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound, to wit, MCDOWALL, MOORE, DUBIN and IRVING, the defendants, in order to obtain home mortgage and/or equity loans totaling $495,000, which loans were funded by interstate wire from a bank account in California to a bank account in New York, New York, submitted and caused to be submitted to Accredited Home Lenders documents containing false information regarding the borrower's intent to live in the property, among other things.

(Title 18, United States Code, Sections 1343 and 2.)

## **FORFEITURE ALLEGATION**

31.  As a result of committing the offense alleged in Count One of this Indictment, MAURICE MCDOWALL, ANDREA MOORE, ALEKSANDER LIPKIN, a/k/a "Alex," MARINA DUBIN, KERRI CLARKE, and MICHAEL IRVING, the defendants, shall forfeit to the United States pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the conspiracy to commit the bank and wire fraud offenses alleged in Count One of this Indictment, including but not limited to the following:

23

a.    At least $20 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense alleged in Count One of the Indictment, for which the defendants are jointly and severally liable;

### SUBSTITUTE ASSET PROVISION

32.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third person;

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §

982(b), to seek forfeiture of any other property of said

defendant(s) up to the value of the above forfeitable property,

including but not limited to the following:

(Title 18, United States Code, Section 982 and Title 18, United
States Code, Section 1343.)




FOREPERSON

MICHAEL J. GARCIA
United States Attorney

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MAURICE MCDOWALL,
ANDREA MOORE,
ALEKSANDER LIPKIN, a/k/a "Alex,"
MARINA DUBIN,
KERRI CLARKE, and
MICHAEL IRVING

Defendants.

## INDICTMENT

07 Cr.

(18 U.S.C. §§ 1343, 1344, 1349)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

Foreperson.